525 P.2d 957

**Paul W. WORTHEN et al., Plaintiffs-Appellants,**

v.

**STATE of Idaho and Idaho State Tax Commission, Defendants-Respondents.**

**No. 11337.**

Supreme Court of Idaho.

Aug. 6, 1974.

Walter H. Bithell, Charles E. Mooney, Boise, for plaintiffs-appellants.

W. Anthony Park, Atty. Gen., Robert L. Miller, Asst. Atty. Gen., Boise, for defendants-respondents.

McQUADE, Justice.

This action involves a challenge to the constitutionality of House Bill 789 enacted by the Second Regular Session of the Forty-First Legislature of the State of Idaho in 1972.[1] House Bill 789 is a revenue act which makes substantial changes in the tax liability of Idaho taxpayers.

The plaintiffs-appellants, Paul W. Worthen, et al., commenced this action alleging that House Bill 789 is unconstitutional. The defendants-respondents, State of Idaho and Idaho State Tax Commission, filed a motion for summary judgment. The trial court entered findings of fact, conclusions of law, and judgment which dismissed the appellants' action. That judgment is appealed to this Court.

The appellants' first assignment of error argues that the trial court erred in granting the respondents' motion for summary judgment because there were material issues of fact in dispute. It is provided in I.R.C.P. 56(c) that,

"The judgment [motion for summary judgment] sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Although the appellants contend that material issues of fact are in dispute, the disputed facts have not been enumerated and are not apparent from a review of the record. It is provided in I.R.C.P. 56(e) that,

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him."

The trial court properly concluded that there were no disputed facts and that the action should be disposed of on the motion for summary judgment.

The appellants' second assignment of error contends that the trial court erred in holding that House Bill 789 was constitutional because it was enacted in violation of art. 3 § 14 of the Idaho Constitution. Before reaching the issue of constitutionality, the question of what records are open to this Court to review the passage of legislation must be decided. It has been held that this Court will take judicial notice of public and private acts of the legislature and the legislative journals to determine whether an act was constitutionally passed and for the purpose of ascertaining what was done by the legislature.[2] Furthermore, it is provided in I.C. § 67–902,

"At the close of each session, general or special, of the legislature of the state of Idaho the secretary of the senate and the chief clerk of the house of representatives shall compile and certify true and correct printed copies of all printed bills and all amendments thereto introduced in their respective houses and file such printed copies with the secretary of state of the state of Idaho. The secretary of state shall retain the custody of such printed bills and amendments thereto and the same shall constitute official records of the state of Idaho."

For the purposes of this appeal, House Bill 789 as originally printed, and the legislative journals relating thereto will be used to trace its legislative history.

House Bill 789 was introduced into the House of Representatives of the Forty-

1. Idaho Sess.Laws ch. 398 at 1149 (1972).

2. Knight v. Employment Security Agency, 88 Idaho 262, 398 P.2d 643 (1965); State ex rel. Brassey v. Hanson, 81 Idaho 403, 342 P.2d 706 (1959); Keenan v. Price, 68 Idaho 423, 195 P.2d 662 (1948).

First Legislature on March 23, 1972. It is a revenue measure as shown by its title,

"Amending section 63–3004, Idaho Code, by altering the date of reference to the Internal Revenue Code; Amending section 63–3022, Idaho Code, by providing that the exemption for active duty in the armed forces of the United States be limited to full time duty outside this State which is or will be continuous and uninterrupted for 120 consecutive days or more; Amending section 63–3024, Idaho Code, to provide new tax rate schedules for the taxable year commencing on and after January 1, 1972 and clarifying said section in accordance with previous intent by providing that the refund authorized therein apply only when none or less than all of the credit otherwise allowed has been used to offset income tax due: Amending section 63–3027, Idaho Code, by providing for low income allowance and nonbusiness deductions and requiring that the additions and deletions of income from idaho sources specified in subsections 63–3022(a), (d), (e), and (i), Idaho Code, by providing that the Multistate Tax Commission be added to the persons allowed to inspect income tax returns and striking authorization to deliver inventory information to county assessors: declaring an emergency and providing retroactive application."

House Bill 789 altered the date of reference to the Internal Revenue Code from the code in effect on January 1, 1971, to the code in effect on January 1, 1972. By altering the reference date, the Idaho Legislature adopted the 1972 Internal Revenue Code's method of calculating taxable income. Although the change would appear to be innocuous, the Internal Revenue Code effective January 1, 1972, contained substantial tax incentives for corporations which has been characterized as follows:

"The Revenue Act of 1971 [effective January 1, 1972] (H.R. 10947) might

also be labeled, the 'Tax Reduction Act of 1971.' Its major provisions are designed, in one way or another, to reduce the tax burden of all taxpayers, individual and business.

"For the business taxpayer, the tax relief takes the form of a number of tax incentives. There are the restored 7% investment tax credit and a new 20% work incentive program credit. Then there is formal approval of the new, liberalized class life system of depreciation (ADR), which authorizes faster write-offs of business machinery and equipment. And there is also a new rapid amortization deduction allowed for the cost of building on-the-job training and child-care facilities.

"To spur the export of United States products, a new tax entity is created— the Domestic International Sales Corporation (DISC), with special rules for deferring the payment of United States tax on income from exports.

"For the individual taxpayer, the tax relief is somewhat more modest. Highlighting the benefits for the individual are an increased personal exemption and a liberalized standard deduction.

"Also included in the Act are the 7%-auto and 10%-light-truck, as well as other, excise tax repeals. Also in the new law are some new tax incentives to aid in the financing of political campaigns."[3]

The House of Representative rules were suspended and House Bill 789 passed on March 24, 1972.

On March 25, 1972, the Idaho Senate made two major amendments to House Bill 789. The Senate struck that portion which permitted individuals to deduct the amount of their federal income tax liability in determining their taxable income for the state of Idaho.[4] The Senate also added the following provisions:

"63–3025. *Tax on Corporate Franchise—Disallowance of Federal Income*

---

3. Revenue Act of 1971, Law and Explanation, Commerce Clearing House, Inc., at 2 (1971).

4. Journal of Idaho State Senate, Second Regular Session, Forty-First Legislature (1972), at 332.

*Tax Deduction.*—For taxable years commencing on and after January 1, ~~1965~~ *1972*, a tax shall be imposed upon any corporation for the privilege of exercising its corporate franchise within this state during such taxable year, which tax shall be measured by its taxable income derived from sources within this state but without the deduction for federal income tax paid or accrued previously permitted by Idaho Code section 63–3022(c), and such tax shall be computed at the rate of ~~6.0~~ *6.5%.*

"Section 8. That Section 63–3025A, Idaho Code, be, and the same is hereby amended to read as follows:

"63–3025A. *Tax on Corporate Income —Disallowance of Federal Income Tax Deduction.*—For taxable years commencing on and after January 1, ~~1965~~ *1972*, a tax is hereby imposed on the taxable income of any corporation derived from sources within this state but without the deduction for federal income tax paid or accrued previously permitted by section 63–3022(c), Idaho Code, and such tax shall be computed at the rate of ~~6%~~ *6.5%*; provided, however, the tax imposed by this section shall not apply to corporations taxed pursuant to the provisions of section 63–3025, Idaho Code, as amended." [5]

On March 25, 1972, House Bill 789 was returned to the House as amended in the Senate. The rules were suspended and the House passed House Bill 789 as amended.

The appellants contend that House Bill 789 was enacted in violation of art. 3, § 14 of the Idaho Constitution which provides:

"Bills may originate in either house, but may be amended or rejected in the other, except that bills for raising revenue shall originate in the house of representatives."

It is argued that the Senate amendments concerning corporate tax liability were

revenue measures that did not originate in the House. The appellants contend that art. 3, § 14 of the Idaho Constitution must be strictly construed to require that all revenue measures originate in the House, and by adding the Senate amendments concerning corporate tax liability, House Bill 789 was enacted in violation of the Idaho Constitution.

The requirement that revenue bills must originate in the House of Representatives is historically derived from parliament's long struggle with the Crown for control of the purse-strings of the English empire.[6] This Court has described the purpose of art. 3, § 14 of the Idaho Constitution as,

"The purpose of incorporating it into the fundamental law is that laws for raising revenue are in exercise of one of the highest prerogatives of government, and confer upon taxing officers authority to take from the subject his property by way of taxation for the public good, a burden to which he assents only because of it being necessary in order to maintain the government, and the people have accordingly reserved the right to determine this necessity by that body of the legislature which comes most directly from the people, the House of Representatives." [7]

The United States Constitution has a similar provision in art. I, § 7,

"All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other bills."

The United States Constitution's provision for revenue bills differs from the Idaho provision in that it specifically provides that the Senate may amend revenue bills that originate in the House. The United States Supreme Court has held that art. I, § 7 of the United States Constitution does not prohibit the Senate from amending

---

5. *Id.*

6. 1 Sutherland, Statutory Construction § 9.06, at 276 (4th ed. C. Sands 1972).

7. Dumas v. Bryan, 35 Idaho 557, 563, 207 P. 720, 722 (1922).

revenue bills originated in the House.[8] Since art. I, § 7 of the United States Constitution differs from art. 3, § 14 of the Idaho Constitution, the Supreme Court cases are not controlling, but they do offer guidance in the construction of art. 3, § 14. Only Indiana and Oregon have constitutional provisions with the same language found in art. 3, § 14 of the Idaho Constitution,[9] and the question of the right of the Senate to amend revenue bills that originate in the House has not been litigated in those two states.

■■ It is generally presumed that legislative acts are constitutional and that state legislatures have acted within their constitutional powers.[10] Article 3, § 14 does not prohibit the Senate from denying passage of a revenue bill, and it does not specifically prohibit the Senate from amending a revenue bill. House Bill 789 began in the House as a revenue bill. Under a strict reading of art. 3, § 14 as argued by the appellants, the Senate could only veto House Bill 789 and could not have suggested the changes that the House subsequently concurred in. To prohibit the Senate from amending House originated revenue bills, would be an obstruction of the legislative process. Art. 3, § 14 must be read to require that revenue bills originate in the House, and that the Senate is permitted to amend such bills. House Bill 789 was not enacted in violation of art. 3 § 14.

The appellants' third assignment of error concerns the contents of House Bill 789. When House Bill 789 was first introduced and printed, it contained a provision striking the requirement found in I.C. § 63-3077 that taxpayers furnish estimates of the value of their inventory of stock of goods in trade to the State Tax Commission which relayed the estimates to the county assessors. When the inventory tax was repealed, the requirement of I.C. § 63-3077 of reporting the value of inventory to the State Tax Commission was no longer necessary.

The House and Senate journals show that there were no amendments to the provision striking part of I.C. § 63-3077. After House Bill 789 was enrolled and signed by the governor, it was discovered that the provision striking part of I.C. § 63-3077 had been omitted. The title of House Bill 789 as enrolled and signed by the governor does state: " * * * striking authorization to deliver inventory information to county assessors * * *." The appellants contend that House Bill 789 never became law because art. 4, § 10 of the Idaho Constitution requires that bills passed by the legislature be presented to the governor for his signature before they become law, and House Bill 789 as passed by the legislature was never presented to the governor for his signature.

■ This Court was faced with a similar problem in the case of Katerndahl v. Daugherty.[11] In that case an enrolled bill that was signed by the governor failed to include a Senate amendment that was passed by both Houses. The case arose in the form of an application for a writ of mandate to require the secretary of state to insert the amendment into the bill. This Court held that, "By the agreed statement of facts the bill as amended was never presented to the Governor, and therefore cannot be a law of the state."[12] The question of the status of the bill as signed by the governor was not reached.

The question was again raised in the more recent case of Kennan v. Price.[13]

8. Rainey v. United States, 232 U.S. 310, 34 S.Ct. 429, 58 L.Ed. 617 (1913); Flint v. Stone Tracy Company, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1910).

9. 1 Sutherland, Statutory Construction, *supra*, note 5.

10. Evans v. Idaho State Tax Commission, 95 Idaho 54, 501 P.2d 1054 (1972); Leonard-son v. Moon, 92 Idaho 796, 451 P.2d 542 (1969); Idaho Telephone Company v. Baird, 91 Idaho 425, 423 P.2d 337 (1967).

11. 30 Idaho 356, 164 P. 1017 (1917).

12. *Id.*, at 358-359, 164 P. at 1017.

13. 68 Idaho 423, 195 P.2d 662 (1948).

That case involved a mandamus proceeding to compel the secretary of state to accept and file a petition of candidacy for nomination of governor of the Democratic Party. The case directly challenged the validity of an amendment adopted in a general election to art. 4, § 1 of the Idaho Constitution which changed the terms of the constitutional state officers from two to four years. The proposed constitutional amendment as passed by the House and Senate included the office of state auditor, but that office was omitted when the engrossed copy of the amendment was filed with the secretary of state. The electors adopted the amendment in the erroneous form. This Court reasoned that,

"Since the omission was a clerical error, we conclude, in the light of the above cases, particularly Fletcher v. Gifford [20 Idaho 18, 115 P. 824], that it was intended by the legislature in submitting this amendment, and by the people in voting to adopt it, to include the words 'state auditor' throughout, and that Sec. 1 of the Resolution should so read, and that the amendment as to this first contention of the plaintiff is valid and operative, and that there was no difference in the amendment as proposed and as voted on and ratified by the electors." [14]

The most recent case dealing with a failure to include the same amendments passed by the legislature in an enrolled bill is State v. Hanson.[15] That case involved an application by members of the House of Representatives for a writ of mandate to compel presentation of a corrected income tax bill to the governor. Due to an error by the enrolling clerk, an amendment passed by both houses that lowered from 3.5% to 3.0% the rate to be applied to the first $1,000 of taxable income was omitted from the bill as signed by the governor. The House Journal contained a letter from the governor that stated the bill's tax rate to be 3.0%. This Court denied the writ and held that the 3.0% rate would be applied as the law of the state.

In this action, there was more than the clerical omission of a few words, but there was an omission of the entire provision striking the inventory reporting requirement. The omission is greater than the omissions in the *Keenan* and *Hanson* cases. This Court has held that obvious clerical errors or misprints in the statutes will be corrected, or words will be read into a statute or omitted therefrom, if the error is plainly indicated, and the true meaning is obvious,[16] but there is a limit to how far this Court can go in correcting legislative errors. It is provided in art. 4 § 10 of the Idaho Constitution that,

"Every bill passed by the legislature shall, before it becomes a law, be presented to the governor."

Everything contained in House Bill 789 as enrolled by the legislative clerks, and submitted to and approved by the Governor, was affirmatively approved by both the House and Senate. That portion which was inadvertently omitted in the enrolling process, i. e., the provision eliminating the requirement to report inventory values, while approved by both the House and Senate, was not approved by the Governor because of the inadvertent omission. Therefore, the omitted portion did not become the law of the State of Idaho. It is separable from the other matters in the bill. The omission will not materially effect the remaining provisions of House Bill 789. Therefore, House Bill 789, as signed by the Governor, is the law of the State of Idaho.

The appellant's final assignment of error argues that if it is held that House Bill 789 as signed by the governor is the law of the state, then the title is in violation of art. 3 § 16 of the Idaho Constitution which provides that,

"Every act shall embrace but one subject and matters properly connected there-

14. *Id.*, at 446, 195 P.2d at 675.

15. 81 Idaho 403, 342 P.2d 706 (1959).

16. State v. Hanson, *supra*, note 14; State v. Witzel, 79 Idaho 211, 312 P.2d 1044 (1957); Frontier Milling & Elevator Company v. Roy White Cooperative Mercantile, 25 Idaho 478, 138 P. 825 (1914); State v. Mulkey, 6 Idaho 617, 59 P. 17 (1899).

with, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The title of House Bill 789 as signed by the governor states ". . . striking authorization to deliver inventory information to county assessors . . ." but the provision striking I.C. § 63–3077 is not in the body of the bill. The appellant argues that the difference between the title and the body of House Bill 789 is misleading and constitutes a violation of art. 3 § 16 of the Idaho Constitution making the entire bill unconstitutional. Such section is not applicable because there is nothing contained in the body that is not expressed in the title. House Bill 789 as signed by the governor was not in violation of art. 3 § 16 of the Idaho Constitution.

No Costs allowed.

DONALDSON, McFADDEN, and BAKES, JJ., concur.

SHEPARD, Chief Justice (dissenting).

I dissent from the ultimate conclusion of the majority opinion. Plaintiffs-appellants herein are members of the Second Regular Session of the Forty-first Idaho Legislature. These legislators challenge the constitutionality of the legislation in question on the basis of procedural irregularities involved in its passage by the legislature and approval by the Governor.

The majority opinion holds that the legislation in question is not unconstitutional as having been passed in violation of that portion of the Constitution requiring revenue bills to *originate* in the House of Representatives. With this conclusion I agree. I believe the key word of the constitutional provision is "originate." There is no question but that the legislation in question is a revenue measure. There is likewise no question that it *originated* in the House. The only question is whether or not the Senate must sit by and either reject or approve in its entirety a measure proposed and passed by the House. Appellant cites

only the case of Dumas v. Bryan, 35 Idaho 557, 207 P. 720 (1922). It is clear that *Dumas* provides no authority for appellants' assertion. There the court said:

"The validity of this act is also denied on the ground that it is a bill for the raising of revenue, and it having originated in the Senate, contravenes Art. 3, sec. 14 of the constitution, * * *."

It was clear in *Dumas* that "Senate Bill No. 298" had originated in the Senate and was also clear that a portion of the legislation "that there is hereby assessed upon all taxable property within the State of Idaho for the years 1921–1922, a tax of ⅛ mill on the dollar * * *" was "a measure for raising revenue * * * [and] is as truly a tax levied for governmental purposes * * * and therefore falls within the inhibition of Article 3, Section 14 of the Constitution."

Appellants state herein "it is not the contention of plaintiffs herein that the Senate does not have the power to reject in total revenue raising measures that originate in the House nor is it the contention of the plaintiffs herein that the Senate *cannot amend* portions of revenue raising bills, so long as the Senate does not effect a change in the actual substance of revenue raising portion of the bill." For this assertion appellants cite no authority and none has been drawn to my attention. I agree with the majority that such interpretation placed on Art. 3, Sec. 14 of the Constitution would be strained and a derogation of legislative powers conferred on the Senate.

I must however disagree with and dissent from the remainder of the majority opinion. It is clear from the facts as submitted by both parties to this action that the legislation originated in the House, was passed and transmitted to the Senate. In the Senate such bill was considered and an amendment thereto was proposed and adopted, and the bill as amended was passed by the Senate. Thereafter it was transmitted to the House in a form containing the Senate amendment. The House considered the bill as amended by the Senate

and passed said amended bill. Such bill was not transmitted to the Governor.

Whatever one may denominate the document which was considered and signed by the Governor, it was not that legislation passed by the legislative branch of government. To add to the complexity of the matter, the facts indicate that the document submitted to the Governor contained a title which was further misleading in that it indicated that matters were contained in the body of the document which in actuality did not exist in the body. The fault, although perhaps immaterial, must be ascribed to those legislative officials over whose signature the document was submitted to the Governor containing a misrepresentation, albeit it was innocent and inadvertent.

I disagree with the majority analysis of the preceding Idaho cases on this question. I see no way to escape the conclusion of Katerndahl v. Daugherty, 30 Idaho 356, 164 P. 1017 (1917). In Katerndahl the precise situation as presented herein was considered by the court and disposed of in a brief one page opinion. Therein it was stated:

"It was further agreed that the bill now on file in the office of Secretary of State, bearing the signatures of the presiding officers of the two Houses and the Governor, does not contain the amendment which was made by the Senate and agreed to by the House."

The court therein disposed of the matter succinctly by stating:

" * * * By the agreed statement of facts the bill as amended was never presented to the Governor, and therefore cannot be a law of the state. This proposition is sufficient to dispose of this case." 30 Idaho at 358–359, 164 P. at 1018.

I believe the majority's consideration of Keenan v. Price, 68 Idaho 423, 195 P.2d 662 (1948) is completely irrelevant and that Keenan is beyond the purview of the instant situation. Therein the necessity of presentation of a legislative bill to the Governor was not under consideration.

Keenan dealt only with a legislatively proposed constitutional amendment. That proposed constitutional amendment had been presented to the people and by them ratified. The court in Keenan v. Price, states:

"Another factor which must be noted and *which must govern in the determination of this issue* is 'that every reasonable presumption, both of law and fact, is to be indulged in favor of the validity of an amendment to the Constitution when it is attacked after its ratification by the people.' " 68 Idaho at 434, 195 P.2d at 667. (Emphasis supplied)

I believe that the reliance on State v. Hanson, 81 Idaho 403, 342 P.2d 706, in the majority opinion is misplaced. In *Hanson,* although the factual pattern was somewhat similar to the case at bar, there were nevertheless very important differences. Those differences were the reason for that court's decision. In *Hanson* a bill originated in the House, was amended there, and passed as amended. In the Senate, the bill was further amended and passed as containing the House amendment and the Senate amendment. It was returned to the House. The House concurred in the Senate amendment and passed the bill as amended in the House and as amended in the Senate. A document purporting to represent that bill, as amended by the Senate and as amended by the House, was transmitted to the Governor. The Governor, upon presentation to him, approved the document and returned the same to the House, stating that he had signed the bill on the basis *as the bill had actually passed the legislature rather than on the basis as presented to him.* The court in *Hanson* took judicial notice of the Governor's communication and stated:

"From this communication it appears that the governor knew the bill as passed by the legislature provided for a rate of 3%, not a rate of 3.5%. It is therefore obvious that his approval was of the 3% rate and not the 3.5% rate.

* * * * * *

"It is these records of the governor's official action which distinguishes this case

from Katerndahl v. Daugherty, supra. In that case there was nothing to show that the governor did not approve the bill as enrolled. In this case the record conclusively shows that all three of the divisions of legislative power—the house, the senate, and the governor—approved the house amendment and made it a part of the act." 81 Idaho at 415, 342 P.2d at 713.

It is therefore my conclusion that the facts in the case at bar fall squarely in *Katerndahl* and demonstrate the unconstitutionality of the legislation in question. I further conclude that there are no facts in the instant case to bring it within the purview of State v. Hanson, *supra,* and hence distinguishable from *Katerndahl.*

I would reverse the trial court's judgment that House Bill 789 is constitutional and remand the case, with directions, that summary judgment be entered in favor of the plaintiffs-appellants. Such action would render moot the further question presented by plaintiffs-appellants regarding the validity of the title to the act as contrasted with the material contained in the body of the bill.