MARIAN E. THOMAS et al., Appellants, v ROBERT M. BEST et al., Individually and as Trustees of the Business Council of New York State, Inc. Insurance Fund, Defendants and Third-Party Plaintiffs-Respondents, et al., Third-Party Defendants.

Third Department, November 15, 1984

## APPEARANCES OF COUNSEL

*Maney, McConville & Liccardi* (*William J. Roberts* of counsel), for appellants.

*Hayes & Lapetina* (*Harry R. Hayes, III,* of counsel), for defendants and third-party plaintiffs-respondents.

## OPINION OF THE COURT

KANE, J.

David J. Thomas was employed as chief administrator of the Associated Industries of New York State, Inc. Insurance Fund (which was succeeded by the Business Council of New York State, Inc. Insurance Fund) (hereafter the Insurance Fund) under a contract dated July 23, 1974. The contract included, *inter alia,* a provision for deferred compensation accumulating at a rate of $10,000 per year, to be paid out at the same rate after termination.[1] In March, 1979, Thomas and the then trustees of the Insurance Fund executed a new employment contract, although the 1974 contract extended to 1984. At this time, Thomas had accumulated $50,000 in deferred compensation

---

1. "(c) (i) If the party of the second part terminates employment with the parties of the first part for voluntary or involuntary reasons prior to retirement, the party of the second part shall receive a Deferred Compensation Allowance, payable in equal annual installments commencing not earlier than the first day of the month following his 55th birthday, in accordance with the following schedule:

| Date of Termination | Deferred Compensation Allowance | Payment Period |
| --- | --- | --- |
| Between 12/31/74 and 12/30/75 | $10,000 | 1 year |
| Between 12/31/75 and 12/30/76 | 20,000 | 2 years |
| Between 12/31/76 and 12/30/77 | 30,000 | 3 years |
| Between 12/31/77 and 12/30/78 | 40,000 | 4 years |
| Between 12/31/78 and 12/30/79 | 50,000 | 5 years |
| Between 12/31/79 and 12/30/80 | 60,000 | 6 years |
| Between 12/31/80 and 12/30/81 | 70,000 | 7 years |
| Between 12/31/81 and 12/30/82 | 80,000 | 8 years |

"(ii) If the party of the second part remains in the employ of the parties of the first part until early or normal retirement date, the party of the second part shall receive the Deferred Compensation Allowance set forth in (i) next above in ten (10) equal annual installments of $10,000, commencing at the actual retirement date.

"(iii) If the party of the second part dies prior to termination of employment or retirement the beneficiary or estate of the party of the second part shall receive ten (10) equal annual installments of $10,000, commencing within ninety (90) days of the death of the party of the second part.

"The parties hereto mutually covenant and agree that either party may cancel this agreement upon giving to the other party ninety (90) days written notice of their election to do so. If this Agreement is cancelled any payments due under (c) next above shall be payable to the party of the second part."

under the 1974 contract and the new contract contained a similar deferred compensation provision.

During this period, the then trustees executed a "restated agreement" which altered the original trust agreement with respect to the settlor's powers (*Matter of Associated Inds. of N. Y. State v Murray,* 80 AD2d 648). Thomas assisted the then trustees with this action, which this court voided (*supra*). Thomas' action with respect to the "restated agreement" constitutes the breach of fiduciary duties alleged by defendants in their counterclaim.

Defendants, the new trustees of the Insurance Fund, terminated Thomas' employment by letter dated March 11, 1981. After termination, Thomas and defendants negotiated the exchange of life insurance policies which defendants had maintained for their cash value. Thomas died on September 1, 1981.

Thomas' wife, Marian Thomas, and the administrator of his estate, George Thomas, brought suit against defendants for, *inter alia,* the $50,000 deferred compensation earned under the 1974 contract up until it was replaced by the 1979 contract. The basis of defendants' affirmative defense and counterclaim for $150,000 was a breach of fiduciary duties by Thomas, based upon his activities with the former trustees. Plaintiffs moved, *inter alia,* for partial summary judgment on the claim for $50,000 deferred compensation under the 1974 contract and dismissal of the counterclaim.[2] By order dated May 20, 1983, Special Term, *inter alia,* denied both of plaintiffs' motions. Special Term held that those dealing with a trustee must exercise good faith and if one, with knowledge, assists a trustee in breaching his duty, they can be liable. Therefore, assuming the pleadings to be true, Special Term concluded they were sufficient on their face. The court denied the motion for partial summary judgment on the ground that the existence of this intertwined counterclaim required a full trial.

Plaintiffs' motion for reargument was granted and, upon reargument, Special Term adhered to its original determination. Plaintiffs appeal from this order.

Defendants' first argument upon appeal was that plaintiffs' appeal was not timely and should, therefore, be dismissed (see CPLR 5513, subd [a]). At oral argument, however, this argument was withdrawn.

---

**2.** Defendants also included accord and satisfaction as their third affirmative defense based upon the exchange of the insurance policies. Plaintiffs moved successfully to dismiss this under CPLR 3211 (subd [b]); no appeal or reargument was sought with respect thereto.

■ As noted previously, Special Term found that defendants' counterclaim could not be dismissed because Thomas' estate could be held liable for his assistance in the trustees' actions. Accordingly, partial summary judgment was denied because Special Term foresaw factual issues which would be better tried simultaneously. We conclude, however, that defendants' counterclaim must be dismissed due to lack of subject matter jurisdiction. Recently, the New York Court of Appeals held that the Employee Retirement Income Security Act of 1974 (ERISA) (88 US Stat 829, US Code, tit 29, § 1001 *et seq.*) preempts any judicial proceedings involving a breach of fiduciary duties against a trustee of a plan under ERISA and limits its enforcement to Federal courts (*Retail Shoe Health Comm. v Reminick,* 62 NY2d 173). Defendants seek damages from Thomas' estate based upon a breach of fiduciary duty when he was chief administrator of the Insurance Fund. Defendants, in their brief, argue that Thomas, as an administrator, was a fiduciary as defined under ERISA and was therefore held to the fiduciary duties set forth in section 1104 of title 29 of the United States Code. Any possible basis for a common-law action based upon breach of fiduciary duties cannot be maintained in our State courts since "ERISA pre-empts *all* claims based on alleged breach of fiduciary duty on the part of ERISA trustees and vests jurisdiction for their enforcement exclusively in the Federal courts" (*Retail Shoe Health Comm. v Reminick, supra,* p 179; emphasis added). Consequently, defendants' counterclaim must be dismissed. Indeed, we note that upon oral argument, defendants' counsel conceded this point.

Having reached this conclusion, the basis of Special Term's order, the existence of defendants' counterclaim, fails. This being so, we proceed to review of the record in order to dispose of the question of partial summary judgment (see *Merrit Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 110).

■ Initially, it should be noted that, in comparison with the counterclaim which is based upon breach of fiduciary duties, the jurisdiction of a claim under ERISA brought by a beneficiary to recover under the terms of a plan is not vested exclusively in Federal court. Accordingly, State courts have concurrent jurisdiction over plaintiffs' claim (US Code, tit 29, § 1132, subd [e], par [1]; *Bittner v Sadoff & Rudoy Inds.,* 728 F2d 820, 825).

The definition section of ERISA provides, in pertinent part, that:

"[T]he terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or

is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program * * *

"(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond" (US Code, tit 29, § 1002, subd [2], par [A]).

The deferred compensation established under the 1974 contract falls within this definition so as to establish a pension plan for Thomas.

Defendants contend that plaintiffs' first cause of action, insofar as it seeks deferred compensation provided for under the 1974 contract, cannot be based upon ERISA. Yet defendants' first affirmative defense states that the 1979 employment contract, which was substantially similar to the 1974 contract, except, in pertinent part, that it did not provide for a 90-day termination by the trustees, was void because it violated the regulations promulgated under ERISA. Although the 1979 contract is not presently before this court, it is inconsistent for defendants to claim that ERISA does not apply to the deferred compensation under the 1974 contract. Furthermore, defendants, who claim that the deferred compensation does not come within ERISA, attempt to eliminate the plan from specific parts of subtitle B of title I of ERISA; part 2 ("Participation and Vesting") (US Code, tit 29, §§ 1051-1061), part 3 ("Funding") (US Code, tit 29, §§ 1081-1086) and part 4 ("Fiduciary Responsibility") (US Code, tit 29, §§ 1101-1114). The subject plan comes within, at least, part 1 ("Reporting and Disclosure") (US Code, tit 29, §§ 1021-1031), even under defendants' arguments.

Plaintiffs argue that if the plan is within the jurisdiction of part 1, then they are entitled to the deferred compensation since, under section 102 of ERISA, the plan description must include, *inter alia:* "a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" (US Code, tit 29, § 1022, subd [b]).

In the present circumstances, plaintiffs contend, the nonforfeitable, vested trait attaches to the plan. We agree, concluding that the plan involved herein has the characteristics of the plan described in *Dependahl v Falstaff Brewing Corp.* (653 F2d 1208) and, consequently, comes within the umbrella of the nonforfeiture provision of section 203 of ERISA (US Code, tit 29, § 1053). It should be noted that defendants inasmuch admit this, noting in their brief that "the purpose of the Insurance Fund buying

and owning the policies on Thomas' life was to fund the deferred compensation in the employment contracts if and when it was earned".

Since the nonforfeiture provisions of ERISA shield the deferred compensation (US Code, tit 29, § 1053, subd [a]),[3] the question of which vested benefits can be forfeited is determined by the parties to the plan (*Alessi v Raybestos-Manhattan, Inc.,* 451 US 504). Defendants point to no provision, express or implied, to show guidelines for forfeiture. Absent such, the rights to the plan cannot be forfeited (*supra*).[4] Moreover, as this court has noted, "ERISA manifests a strong public policy against forfeiture of employee benefits" (*Grich v Wood & Hyde Leather Co.,* 74 AD2d 183, 184, citing *Post v Merrill Lynch, Pierce, Fenner & Smith,* 48 NY2d 84, 88). Plaintiffs' motion for partial summary judgment should, therefore, be granted.

In so ruling, we reject defendants' contention, raised for the *first* time on appeal, that the 1974 contract was discharged by the formation of the 1979 contract. Both sides admit that a new contract was formed in 1979, which included a deferred compensation clause similar to that found in the 1974 contract. Defendants argue that it was the intention of the parties that Thomas would forfeit the previously earned deferred compensation under the 1974 contract. Defendants, however, present nothing to support this bald assertion contained in their brief and, in fact, undermine this position by asserting that the 1979 contract was a sweetheart contract because of Thomas' assistance to the then trustees. In sum, this unsubstantiated contention is wholly lacking in merit (see 22 NY Jur 2d, Contracts, § 268, p 126; see *Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573).

MAHONEY, P. J., CASEY, WEISS and LEVINE, JJ., concur.

Order reversed, on the law, with costs, and motion granted.

---

3. ■ In their "second affirmative defense", defendants assert that plaintiffs are not entitled to the deferred compensation because, due to his alleged misconduct, "Thomas' employment was terminated for just cause". The question of whether Thomas lost his employment in 1981 due to misconduct does not bar the instant motion for partial summary judgment based on Thomas' entitlement to deferred compensation under the 1974 contract (see *Fidelity Union Trust Co. v Ball Sales,* 99 AD2d 436; cf. *Grich v Wood & Hyde Leather Co.,* 74 AD2d 183, 184; *Sauer v Century Fed. Sav. & Loan Assn.,* 69 AD2d 495, 504).

4. As noted in *Alessi v Raybestos-Manhattan, Inc.* (451 US 504, 511), the private parties, not the Government, define the content of the benefit that, once vested, cannot be forfeited. Thus, the private parties control the level of benefits.