754 P.2d 454

NBC LEASING COMPANY and Lease Northwest, Inc., Plaintiffs,

v.

R & T FARMS, INC., Ray Douthit, Thirza Lou Douthit; Richtron Financial Corporation; Utah Mortgage Loan Corporation; and Northwestern National Life Insurance Company, Defendants.

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a corporation, Plaintiff–Respondent,

v.

WESTERN SEEDS, INC., Defendant–Appellant,

and

C. Bruce Young; Ray Douthit and Thirza Douthit, Defendants.

No. 16931.

Court of Appeals of Idaho.

April 28, 1988.

Brent T. Robinson, Ling, Nielsen & Robinson, Rupert, for defendant-appellant.

William Parsons, Parsons, Smith, Stone & Fletcher, Burley, for plaintiff-respondent.

WALTERS, Chief Judge.

Northwestern National Life Insurance Company, as a landowner, brought this action against C. Bruce Young, Western Seeds, Inc., and Ray and Thirza Douthit to recover the value of its share of soft white wheat harvested from Northwestern's property by the Douthits. A trial without a jury began, but was recessed after presentation of the plaintiff's case to permit the Douthits to amend their pleadings and to provide Northwestern the opportunity for responsive discovery. During the continuance, Western Seeds and Young moved for summary judgment. Relying on *Wing v. Amalgamated Sugar Co.*, 106 Idaho 905, 684 P.2d 307 (Ct.App.1984), summary judgment was granted by the court.[1] On appeal by Northwestern, our Supreme Court held that, despite the form of the agreement, the owner-landlord's proprietary interest in its share of the crop could not be unilaterally subordinated to the interest of a third party, such as Western Seeds or Young. *NBC Leasing Co. v. R & T Farms, Inc.*, 112 Idaho 500, 733 P.2d 721 (1987) (hereinafter *NBC I*). *See generally* 52A C.J.S. *Landlord and Tenant* § 825 (1968).

On remand from that decision, and without an additional evidentiary hearing, the district court granted summary judgment to Northwestern against Western Seeds and Young. This appeal by Western Seeds presents two questions. First, does a clause relating to the provision of water modify the crop share belonging to the landowner, Northwestern? Second, is the farmer's intent material to the distribution of the landowner's share among the buyers? We affirm the district court's judgment.

These issues are framed by the following facts. Northwestern, an owner of Cassia County farmland, entered into a sharecrop agreement with Ray and Thirza Douthit, local farmers. The agreement was reduced to writing and provided that one-third of the crop would belong to Northwestern and two-thirds would belong to the Douthits. Northwestern assumed the obligation to provide water and, arguably, to provide irrigation equipment.[2]

Apparently to arrange financing for their operation, the Douthits "subleased" the property to C. Bruce Young, while continuing to farm it themselves. In 1982, Ray Douthit harvested the grain on Northwestern's property and divided it between Western Seeds, Inc., and the Union Seed Company. The value of the wheat delivered to Western Seeds was applied toward the debt owed by the Douthits. Part of the proceeds from Union Seed's share was paid to Young, who in turn used a substantial portion of the funds to retire the operating loan.

On remand from *NBC I*, the district court granted a summary judgment to Northwestern against Western Seeds and Young. The court awarded Northwestern one-third of the value of the grain delivered to each seed company, plus prejudgment interest. Western Seeds appeals, contending that the court should have held an evidentiary hearing following the remand.

Preliminarily, we restate the familiar standards governing motions for summary judgment.[3] Summary judgment is appropriate only where no genuine issue of material fact remains after the pleadings, depositions, admissions, and affidavits have been construed favorably to the party opposing the motion, and where the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–America Fire & Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982). When the judge rather than a jury will be the ultimate trier of fact, the judge may draw the inferences he or she deems most probable from any uncontroverted evidence. *Riverside Develop-*

---

1. That judgment, like the one before us today, was certified as final pursuant to I.R.C.P. 54(b).

2. Apparently, the equipment was leased from NBC Leasing, Inc. That lease is the subject of the first of the consolidated actions in the title of this case.

3. We note that the summary judgment at issue here, like those in *NBC I*, was granted after the trial had begun. In *NBC I* the Supreme Court identified no flaw in this unusual procedure. Western Seeds has not objected to the form of the proceeding below.

*ment Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982); *Anderson v. Farm Bureau Mutual Ins. Co. of Idaho,* 112 Idaho 461, 732 P.2d 699 (Ct.App.1987). Western Seeds contends that the court erred by granting summary judgment because two questions of fact remained to be determined—the fraction of the crop belonging to Northwestern, and the form of the division of Northwestern's share between Western Seeds and Union Seed. We examine each assertion in turn.

### I

■ In *NBC I,* our Supreme Court held that any proprietary interest of Northwestern was superior to Western Seeds' security or possessory interest in the grain. On remand the district court concluded that Northwestern clearly had a proprietary interest in one-third of the crop delivered to Western Seeds and entered judgment accordingly. The district court based this determination on the sharecrop agreement between Northwestern and the Douthits. Western Seeds asserts that Northwestern was obligated to provide water and an irrigation system, that Northwestern breached that duty, and that an adjustment of shares resulted.

The letter of agreement between Northwestern and the Douthits stated:

> The crop will be divided one-third (⅓) to NWNL (Northwestern) and two-thirds (⅔) to you (Douthit). You (Douthit) will be responsible for all crop expenses except for irrigation water which we (Northwestern) will pay for.[4]

Western Seeds uses this last contract term to argue that Northwestern's share was something less than one-third because Northwestern was obligated to supply water and irrigation equipment. The extent of Northwestern's obligation is disputed and has yet to be resolved. Western Seeds contends that the language of the agreement is thereby rendered ambiguous and that additional evidence is required to determine whether a breach of that duty by Northwestern automatically increased

Douthits' share of the crop. Northwestern asserts that Western Seeds is attempting to characterize a contract term which would permit a counterclaim by the Douthits as a contract ambiguity. We agree that Western Seeds' argument is wide of the mark.

Whether a written contract is ambiguous is a question of law on which we exercise free review. *DeLancey v. DeLancey,* 110 Idaho 63, 714 P.2d 32 (1986); *Currie v. Walkinshaw,* 113 Idaho 586, 746 P.2d 1045 (Ct.App.1987). The trial court apparently found no ambiguity in the letter from Northwestern to Douthit regarding the division of interests in the crop.

While it may be true that Northwestern promised to supply water and to maintain the irrigation equipment, and that Northwestern breached that promise, that duty would ordinarily be owed to the sharecropper, not to a third party, such as Western Seeds. No evidence has been called to our attention suggesting that the agreement between Northwestern and the Douthits contained any type of automatic share-adjustment provision. On the contrary, Ray Douthit's testimony indicates that he still believed at the time of trial that one-third of the crop belonged to Northwestern. That testimony, like an affidavit, was given under oath. Therefore, it properly could be considered by the court when ruling on the later summary judgment motion. *See Rawson v. Idaho State Bd. of Cosmetology,* 107 Idaho 1037, 695 P.2d 422 (Ct.App. 1985). There is simply no suggestion in the record that providing water was anything other than a separate duty of the landowner. We hold that the agreement is unambiguous with respect to the fraction of the crop owned by Northwestern.

While an offset may be due the Douthits, Western Seeds is not subrogated to the Douthits' right in any manner. At oral argument the parties indicated that the Douthits are continuing to independently pursue their right to an offset in a separate part of this action. Absent a modification of the express shares of the grain, the

---

**4.** Unfortunately, the exhibit/letter itself has not been included in the record on this appeal. The quoted provisions of this letter are taken from Western Seeds' brief on appeal.

question whether Northwestern breached a duty owed to the Douthits to supply irrigation equipment was not material to the issue being contested between Northwestern and Western Seeds.

## II

■ Western Seeds also contends that a question of fact exists regarding the delivery of the wheat. Apparently the wheat from Northwestern's property was apportioned by Ray Douthit between Western Seeds and the Union Seed Company. The judgment entered by the trial court presumed that wheat was delivered proportionately, i.e., one-third of the wheat delivered to each seed company belonged to Northwestern. Western Seeds asserts that Douthit may have intended to deliver Northwestern's share entirely to Union Seed and that it, Western Seeds, came into possession of only the Douthits' wheat. Western Seeds contends an evidentiary hearing is required to resolve this question of fact. We are not persuaded that Douthits' intent at delivery was material to the issue before the trial court.

As our Supreme Court ruled, Northwestern had a right to one-third of the crop removed from its property. Northwestern elected to recover its loss in a most equitable manner—according to the proportionate share delivered to each seed company.

Western Seeds has not alleged that the wheat harvested and delivered to Western Seeds and Union Seed, respectively, varied in strain, quality, or moisture content. Wheat, unless otherwise indicated, is a fungible commodity. In the case before us, there is no evidence of segregation or specific identification of ownership other than an inference which Western Seeds asserts should be drawn from the Douthit–Western Seeds debtor-creditor relationship. Ordinarily, this type of goods may be held in undivided shares. *Cf.* I.C. § 28–2–105(4); I.C. § 28–2–501 comment 5.

As stated in *Riverside Development Co. v. Ritchie, supra,* where a judge will be sitting without a jury he may draw inferences from uncontested evidence when entering a summary judgment. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth by affidavits or otherwise specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e); *Anderson v. Farm Bureau Mutual Ins. Co. of Idaho, supra.* The district court apparently found no reason to doubt that the wheat was equally apportioned. Our review of the record also reveals nothing to the contrary. We hold that the district court was not required to determine Douthits' intent in this matter prior to entering summary judgment.

## III

■ Both parties seek attorney fees on appeal pursuant to I.C. § 12–121. Our standard for determining whether attorney fees on appeal should be awarded under that statute is well known. Attorney fees will be awarded only when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979); *see, e.g., T-Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct.App.1982). Here, the arguments forwarded by Western Seeds, although apparently sincere, are substantially without merit. We believe pursuing this appeal was unreasonable and, therefore, hold that Northwestern is entitled to reasonable attorney fees on appeal, to be determined by the trial court pursuant to I.A.R. 41.

The judgment of the district court is affirmed. Costs and attorney fees to Northwestern National Life Insurance Company.

BURNETT and SWANSTROM, JJ., concur.