775 P.2d 1191

**Harley H. ZEHM and Dorothy L. Zehm, Plaintiffs–Appellants,**

v.

**ASSOCIATED LOGGING CONTRACTORS, INC., Defendant–Respondent,**

and

**California–Western States Life Insurance Company; Financial Marketing Services, Inc.; Does One through Ten, Defendants.**

No. 17099.

Supreme Court of Idaho.

July 20, 1988.

On Rehearing June 13, 1989.

Scott F. Maricle, Sandpoint, for plaintiffs-appellants.

Connolly & Smyser, Ctd., Boise, for defendant-respondent. Charles A. Smyser (argued).

SHEPARD, Chief Justice.

This is an appeal by plaintiffs-appellants Zehm from a summary judgment entered in favor of defendant-respondent Associated Logging Contractors, Inc. in an action in which the Zehms sought damages for loss of group medical insurance benefits allegedly resulting from a change of insurance carriers. We affirm.

Associated Logging Contractors is a nonprofit association composed of logging contractors and others in associated occupations. It acts as an information source for its members, lobbies for legislation beneficial to the logging industry, and provides its members with representation at federal and state administrative hearings. As a service to its members, Associated Logging provided in the past an optional group health insurance plan which at various

times was administered by three different insurance carriers. As a result of increased costs to its members, Associated Logging terminated all such insurance in 1984.

Although not associated with the logging industry, the Zehm's daughter was an employee of Associated Logging, and the Zehms became members or associate members for the purpose of obtaining the group health insurance coverage then existing under the Great West plan. In August, 1983, Associated Logging decided to change insurance carriers, and in December, 1983, the new carrier, Cal–West, notified the Zehms that they had been denied group coverage due to their medical history. The Zehms were informed by Great–West that they could convert their group plan to an individual policy, but the Zehms did not so convert their plan because of the cost. Rather, the Zehms purchased health insurance coverage from Continental Insurance, but that policy ultimately lapsed due to failure to make premium payments.

At the trial court, and on this appeal, it is asserted that Associated Logging breached a fiduciary duty to the Zehms in failing to provide the members of Associated Logging with an insurance plan comparable to the then existing plan, by failing to adequately advise its membership of the change in carriers and coverage, and that such change in insurance carrier was motivated by Associated Logging's financial consideration and self-interest. The trial court expressed its doubt that any fiduciary relationship existed, however proceeded to assume arguendo that such a relationship did exist. For the purposes of this case only we make the same assumption.

Associated Logging, in affidavits in support of summary judgment, asserts that the change in insurance carriers was motivated solely by financial considerations to its members, and that it had no interest, financial or otherwise, in the change in carriers. Zehms, in their deposition or affidavit testimony, make no assertion to the contrary. The Zehms in their pleadings originally assert that oral representations were made by Associated Logging that the

Zehms would be continued in the new insurance coverage and not excluded for preexisting medical conditions. The Zehms in their deposition testimony deny any such oral representations. It is undisputed that the Zehms received written notice of the change of insurance carriers. Two such notices were admittedly received, the earlier of which indicated members would *not* be excluded from the new coverage because of preexisting conditions, and the second of which indicated that members could be excluded because of previous medical conditions. The trial court correctly noted that the deposition testimony of the Zehms indicated that although they had received the notices, they had not read nor relied upon them. Hence, if any duty existed to notify the Zehms, and that duty was breached by inadequate or ambiguous notice, no causal connection existed since the Zehms did not read or rely upon any such notices.

It is axiomatic that upon a motion for summary judgment the non-moving party may not rely upon its pleadings, but must come forward with evidence by way of affidavit or otherwise which contradicts the evidence submitted by the moving party, and which establishes the existence of a material issue of disputed fact. *Worthen v. State*, 96 Idaho 175, 525 P.2d 957 (1974); *Tri–State Nat. Bank v. Western Gateway Storage Co.*, 92 Idaho 543, 447 P.2d 409 (1968); I.R.C.P. 56(e). Herein the Zehms did not so come forward with evidence, but rather their deposition testimony indicated that many of the facts asserted by Associated Logging were correct.

■ As above noted, Zehms also asserted in their complaint that when Associated Logging changed insurance carriers, Associated Logging was under a duty to provide continued coverage with the same benefits contained in the Cal–West policy. As correctly noted by the trial judge, said assertion is unsupported by any evidence of the Zehms, and directly contrary to the uncontradicted testimony of Associated Logging. Associated Logging received no financial benefits from the various health insurance plans, but rather it offered such insurance

to its members solely as a gratuity. Nothing in the association bylaws required Associated Logging to offer any insurance plan to its members, and there is no showing of any representation by Associated Logging to its members that it would provide continuous coverage to its members. The change in insurance carriers was motivated solely by financial considerations to the membership. As noted, Associated Logging, approximately one year later, discontinued any insurance plan for its members. The result of the Zehm's theory, if adopted, would require any nonprofit trade association who offered insurance coverage to its members to continue such insurance coverage forever. We will not so hold.

■ At the district court level the Zehms argued for relief against defendant Cal–West, but summary judgment was also issued thereon, and Cal–West is not a party to this appeal. We note further that on appeal the Zehms have attempted to raise new issues not presented at the district court level, *i.e.*, that Associated Logging's insurance plans were made as agents for its membership, and hence fell under the strictures of ERISA (The Employee Retirement Income Security Act of 1974), 29 U.S.C. § 1001 *et seq.* No facts supporting such argument were presented to the district court, nor was any such theory or argument advanced to the district court in opposition to summary judgment. Hence, such assertions will not be heard for the first time on appeal. *State v. Campbell,* 114 Idaho 367, 757 P.2d 230 (App.1988); *Gardner v. Evans,* 110 Idaho 925, 719 P.2d 1185 (1986); *Baldner v. Bennett's, Inc.,* 103 Idaho 458, 649 P.2d 1214 (1982); *State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980).

■ Following the district court's order for summary judgment the Zehms moved to amend the summary judgment. Following briefing and hearing, that motion to amend the summary judgment was denied, and the district court awarded attorney fees to Associated Logging for its defense of the original summary judgment. In connection with their motion to review the

original summary judgment, the Zehms offered no additional authority, theory, or reason for amending the original summary judgment, nor did they cite any error in the district court's original ruling. Hence, the district court exercised its discretion to award reasonable attorney fees to the prevailing party "when it finds from the facts presented to it that the case was brought, pursued or defended frivolously, unreasonably or without foundation." *NBC Leasing Company and Lease Northwest, Inc. v. R & T Farms, Inc.,* 114 Idaho 141, 754 P.2d 454 (App.1988); I.R.C.P. 54(e)(1); I.C. § 12–121.

The decision and orders of the district court granting summary judgment to Associated Logging are affirmed. The order of the district court awarding attorney fees to Associated Logging is affirmed. Costs to respondent.

BAKES, BISTLINE, HUNTLEY and JOHNSON, JJ. concur.

## ON REHEARING

A rehearing was granted, briefing received, and oral argument submitted to the Court. A majority of the Court continues to adhere to the original opinion. Therefore, the decision and orders of the district court are affirmed. The district court's award of attorney fees is affirmed. No attorney fees on appeal; costs on appeal and on rehearing to respondent.

BAKES, C.J., and SHEPARD *, HUNTLEY and JOHNSON, JJ. concur.

BISTLINE, Justice, dissenting.

The majority turns a blind eye to controverted issues of material fact, documented in the record, in continuing to affirm this summary judgment after rehearing. In fact, today's majority notwithstanding the benefit of second briefing and oral argument, lets stand the state of the record. In particular we know now, or should, that the majority opinion continues to twice misrepresent the state of the appeal record:

---

* Shepard, J. sat and fully participated in the    opinion prior to his untimely death.

Associated Logging, in affidavits in support of summary judgment, asserts that the change in insurance carriers was motivated solely by financial considerations to its members, and that it had no interest, financial or otherwise, in the change in carriers. *Zehms, in their deposition or affidavit testimony, make no assertion to the contrary.*

Majority Opinion, p. 350, 775 P.2d p. 1192 (emphasis added).

We note further that on appeal *the Zehms have attempted to raise new issues not presented at the district court level, i.e.,* that Associated Logging's insurance plans were made as agents for its membership, and hence fell under the strictures of ERISA (The Employee Retirement Income Security Act of 1974), 29 U.S.C. § 1001 *et seq. No facts supporting such argument were presented to the district court, nor was any such theory or argument advanced to the district court in opposition to summary judgment.* Hence, such assertions will not be heard for the first time on appeal.

Majority Opinion, p. 351, 775 P.2d p. 1193 (emphasis added) (citations omitted).

Mr. Zehm, in his deposition taken by Associated Logging, countered the affidavit assertion of ALC that they had no financial interest in changing carriers:

Q  On Page No. 6, No. 23, you allege that the association breached its fiduciary duty to its membership, including plaintiffs, and that its change of insurance plan was motivated by the association's self-interest. What do you understand that self-interest to be?

A  Well, you don't have to be very smart to figure that one out. *The association was losing money on its self-funding program, and they were—they were getting ready—they were ready to drop anybody that was collecting off of their self-funding program.* It's just— it's just common sense. Anybody can figure that one out.

Q  All right. And what are you saying, specifically?

A  *That Associated Loggers were terminating this insurance, the self-fund-*

*ed plan, because they couldn't afford to do it. They were losing money on it.* Harley Zehm Deposition, p. 74 (emphasis added).

In addition, the Zehms claim of breach of fiduciary duty based on ERISA was most certainly argued below, as evidenced by the following passage from the Zehm's trial brief opposing ALC's motion for summary judgment:

See also page 23 of Exhibit 1 to Harley Zehm's deposition, which is the Summary Plan Description for the group insurance plan administered by Great West and bearing the *ALC logo* on the cover. Set forth on page 23 are the following provisions:

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA) . . .

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so *prudently* and in the *interest of you* and other plan participants and beneficiaries. (Emphasis added.)

Thus, in the self-insured plan of defendant ALC, administered by Great West, ALC's own booklet distributed to its members provided that the people responsible for operation of the plan are fiduciaries and have a fiduciary duty. R., Vol. 2, p. 92.

Facts *were* brought forth in the trial court that supported counsel's argument. Exhibit No. 1 to Mr. Zehm's deposition is the insurance plan booklet issued by ALC and administered by Great West Life. Attached as Appendix A are the relevant pages from the exhibit that contradict the statement made in the majority opinion.

More importantly, brief research into the ERISA law quickly established that a claim of breach of fiduciary duty must be heard exclusively in the federal courts. 29 U.S.C. § 1132 provides in relevant part:

§ 1132.  **Civil Enforcement**

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) *by a participant or beneficiary—*

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the term of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, *or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;*

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;

. . . .

(e) Jurisdiction

(1) *Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, benefi-ciary,* or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

(Emphasis added.)

Case law has consistently interpreted the statute to vest jurisdiction over a claim of breach of fiduciary duty exclusively in the federal courts. *Morrissey v. Curran,* 567 F.2d 546 (2d Cir.1977); *Duffy v. Brannen,* 148 Vt. 75, 529 A.2d 643, 651 (1987); *Thomas v. Best,* 104 A.D.2d 37, 482 N.Y.S.2d 368, 371 (1984); *Goldberg v. Caplan,* 419 A.2d 653, 657 (Pa.App.1980); *See also* H.R. Conf.Rep. No. 1280, 93d Cong.2d Sess., Reprinted in 1974 U.S. Code Cong. & Ad. News 4639, 5038, 5107 ("The U.S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility . . ."), cited in *Duffy v. Brannen, supra.*

Thus, the majority is not fair *and* accurate—a state of affairs not in accordance with the goals of this Court. The incorrect assertions regarding the state of the record quoted above should be deleted although the opinion should continue to affirm the summary judgment in favor of ALC with regard to the Zehms' causes of action for misrepresentation and for negligence. The claim of breach of fiduciary duty based on ERISA should be dismissed for lack of jurisdiction without prejudice to pursue the claim in federal court.

354

DEPOSITION
EXHIBIT
10-08-86
1
Mr. Zehm

# Summary Plan Description

## GENERAL INFORMATION

1. Name of Plan:
   Group Insurance Plan for all eligible members and employees of Associated Logging Contractors of Idaho, Inc., Trust

2. Name and Address of Policyholder:
   Associated Logging Contractors of Idaho, Inc., Trust
   P.O. Box. 671
   Coeur d'Alene, Idaho 83814

3. Employer Identification Number (E.I.N.) assigned for this plan by IRS:
   82–0288778

   Plan Number assigned by the Policyholder:
   501

4. Funding:
   The Life and Accidental Death, Dismemberment and Loss of Sight Insurance and Weekly Income are funded by The Great-West Life Assurance Company.

   The Medical portion of the plan is funded by the Associated Logging Contractors of Idaho, Inc., Trust to the extent of the Association's liability for such benefits. Any benefits which are not the Association's liability are funded by The Great-West Life Assurance Company.

5. Type of Administration:
   Contract Administration for Life Insurance, Accidental Death, Dismemberment and Loss of Sight Insurance and Weekly Income.

   The Associated Logging Contractors of Idaho, Inc., Trust has entered into an agreement with the insurance company whereby the Association will share with the insurance company the liability for the medical benefits described in this booklet. This means the Association has agreed to fund a portion of these benefits. This portion is uninsured. All claims, whether insured of [or] uninsured, will be processed by the insurance company.

6. The name, business address and telephone number of the Plan Administrator:
   Mr. H.W. White, Executive Secretary
   Associated Logging Contractors of Idaho, Inc., Trust
   4055 Government Way
   Coeur d'Alene, Idaho 83814

   Phone: (208) 667-6473

7. The name of the person designated for service of legal process and street address at which process may be served on such person:
   Plan Administrator (see above)

8. Eligibility requirements, termination provisions and a description of the circumstances which may result in disqualification, ineligibility, or denial or loss of any benefits are described earlier in this booklet.

9. The sources of contributions to the plan:
   Member, Employer, Employee

   The method by which the amount of contribution is determined:
   The Member or Employer pays 100% of the Employee cost.

   See your Member or Employer for Dependent costs.

10. The date of the end of the year for purposes of maintaining the plan's fiscal records:
    May 31

11. Claims—The procedures to be followed in presenting claims for benefits under the plan and the remedies for the redress of claims which are denied in whole or in part are described earlier in this booklet.

12. Plan Trustees:

Lyn Carter, Chairman
5167 N. 16th Street
Coeur d'Alene, ID 83814

Connie Roth
P.O. Box 427
Hayden Lake, ID 83835

Walt Sims
P.O. Box 1052
Hayden Lake, ID 83835

Tom Hodgson
Route 1
St. Maries, ID 83861

Advisor

Carl Nelson
P.O. Box 190
Pierce, ID 83546

Shirley McDonald
Route 5, Lamb Creek
Priest River, ID 83856

Richard Nordstrom
E. 2175 Horsehaven
Ave.
Post Falls, ID 83854

Clifford Kleer
Route 1
Orofino, ID 83544

Leo Musselman
Route 1, Box 141
Orofino, ID 83544

Statement of ERISA rights:

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

(1) Examine, without charge, at the plan administrator's office and at other specified locations, such as work sites, all plan documents, including insurance contracts and copies of all documents filed by the plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions.

(2) Obtain copies of all plan documents and other plan information upon written request to the Plan Administrator. The Administrator may make a reasonable charge for the copies.

(3) Receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court. In such case, the court may require the Plan Administrator to provide the materials and pay you up to $10 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay the court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees. For example, if it finds your claim frivolous. If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

This booklet is a summary of the principal features of the plan,but the Group Policy issued to Associated Logging Contractors of Idaho, Inc., Trust by Great-West Life is the governing document. In the event of any variation between the information in this summary and the provisions of the policy, the latter will prevail.

Arranged by

WILLIAM M.
MERCER
INCORPORATED

Benefit Services / Consulting Actuaries
A Marsh & McLennan Company

Administered by

THE
**Great-West Life**
ASSURANCE COMPANY
HEAD OFFICE • WINNIPEG CANADA

